1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2             FOR THE EASTERN DISTRICT OF TEXAS

 3                     MARSHALL DIVISION

 4   APPLICA CONSUMER          )(

 5   PRODUCTS, INC.            )(   CIVIL DOCKET NO.

 6                             )(   2:07-CV-00073-CE

 7   VS.                       )(   MARSHALL, TEXAS

 8                             )(   SEPTEMBER 11, 2008

 9   DOSKOCIL MFG. CO., INC.   )(   1:15 P.M.

10                       MOTIONS HEARING

11          BEFORE THE HONORABLE JUDGE CHAD EVERINGHAM

12              UNITED STATES MAGISTRATE JUDGE

13   APPEARANCES:

14   FOR THE PLAINTIFF:        MR. KEVIN SADLER
                               MR. R. WILLIAM BEARD, JR.
15                             Baker Botts, LLP
                               1500 San Jacinto Center
16                             98 San Jacinto Blvd.
                               Austin, TX  78701
17

18                             MS. ELIZABETH L. DERIEUX
                               Capshaw DeRieux, LLP
19                             1127 Judson Road
                               Suite 220
20                             Longview, TX  75601

21   COURT REPORTER:           MS. SHELLY HOLMES, CSR
                               Deputy Official Court Reporter
22                             2593 Myrtle Road
                               Diana, TX  75640
23                             (903) 663-5082

24
     (Proceedings recorded by mechanical stenography,
25   transcript produced on a CAT system.)
```

2

```
 1   FOR LUCKY LITTER:        MR. ERIC COHEN
                              Katten, Muchin, Zavis &
 2                            Rosenman
                              525 W. Monroe Street
 3                            Suite 1600
                              Chicago, IL  60661
 4

 5                            MR. HARRY L. "GIL" GILLAM, JR.
                              Gillam & Smith, LLP
 6                            303 South Washington Avenue
                              Marshall, TX  75670
 7

 8

 9   FOR OURPET'S COMPANY:    MR. PAUL STORM
                              Storm, LLP
10                            901 Main Street
                              Suite 710
11                            Dallas, Texas  75202

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

1                          I N D E X

2

3   September 11, 2008

4                                          Page

5      Appearances                         1

6      Hearing                             4

7      Court Reporter's Certificate        33

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    COURT SECURITY OFFICER:  All rise.

 2                    THE COURT:  Please be seated.

 3                    All right.  Are you the parties here in the

 4     Applica matters or matter?

 5                    MR. SADLER:  Both, Your Honor.

 6                    THE COURT:  All right.  I'll call first

 7     announcements in 2:07-CV-73, Applica versus Doskocil.

 8                    Who's here on that one?

 9                    MR. SADLER:  Your Honor, good afternoon.

10     Kevin Sadler, Baker Botts, here with my colleague,

11     Mr. William Beard and Ms. Betty DeRieux on behalf of

12     Applica for both cases.

13                    THE COURT:  Okay.  And the second one, just

14     for purposes of the record, is 2:07-CV-454, Applica

15     against OurPet's.

16                    Who's here for Doskocil in the 73 case?

17                    MR. GILLAM:  Doskocil is not present, Your

18     Honor.  I think they sent a letter that they were not

19     going to come.  It's Gil Gillam and Eric Cohen for Lucky

20     Litter.

21                    THE COURT:  Okay.  And that's in the 454

22     case, correct, Mr. Gillam, or is it in the 73 case?

23                    MR. GILLAM:  That's the 73 case.

24                    THE COURT:  Okay.  Well, with -- all right.

25     Go ahead.
```

```
 1              MR. STORM:  Paul Storm for OurPet's on the
 2    454.  We understood our hearing was next, so I was not
 3    up at the table, but I'm here for OurPet's.
 4              THE COURT:  Well, you're welcome to stay for
 5    both of them.
 6              MR. STORM:  Thank you, sir.
 7              THE COURT:  All right.  What's the problem
 8    in the 73 case?  What issues are outstanding?
 9              MR. SADLER:  Your Honor, if I may, my
10    colleague, Mr. William Beard, is going to speak to the
11    stay and discovery issues which relate to the case you
12    just called.  There's a separate motion to disqualify in
13    the OurPet's case, 454, which we can take up in any
14    order Your Honor wants.
15              THE COURT:  Well, what has been resolved is
16    my question with respect to the 73 case?
17              MR. SADLER:  Yes, sir, let me let Mr. Beard
18    speak to that.
19              MR. BEARD:  Your Honor, since these motions
20    were filed, you're aware they were filed, I think the
21    first one back in January of last year and then several
22    months after that the second one was filed.  I'm sure
23    the Court is also aware that there's an International
24    Trade Commission case pending.
25              THE COURT:  Don't assume too much here,
```

1   Mr. Beard.  I've been trying a patent case all week,

2   been preparing another one for trial for upstairs.  I've

3   been dealing with getting orders and reports and

4   recommendations out on my six month list, and I've got

5   y'all here on your case.  So tell me what you think you

6   need to tell me.

7            MR. BEARD:  Thank you, Your Honor.  When

8   those motions were filed, there was a lot of outstanding

9   discovery that we were asking the Court to compel Lucky

10  Litter to produce.  We went away to the International

11  Trade Commission, and we just got back from our hearing

12  at the International Trade Commission.

13           Pursuant to the International Trade

14  Commission, a lot of the same discovery relative to one

15  of the patents that is in suit in this case, we

16  conducted a vast amount of discovery.  So a lot of that

17  discovery that took place in the International Trade

18  Commission, by agreement with Lucky Litter, we agreed

19  that it was also applicable to this case, as well.  So

20  we resolved many of the outstanding disputes through the

21  vehicle of the International Trade Commission.

22           Where we stand right now, Your Honor, on

23  these motions has to do with just the issues of damages,

24  our trademark infringement claim, and our unfair

25  competition claim.  So when we took some of the

1    discovery of their principal -- in fact, we deposed

2    Mr. Alan Cook, who is the principal for Lucky Litter.

3    We left that deposition open to speak to the issues of

4    damages and trademark infringement intending that we

5    would come back after the ITC hearing and conduct that

6    discovery.  That is within the scope of our motions to

7    compel that were filed way back when.

8            THE COURT:  Okay.  All right.  Is there any

9    disagreement that that's what's left to decide with

10   respect to the motions to compel?

11           MR. COHEN:  Your Honor, this is Eric Cohen.

12   We have produced -- with respect to the motions to

13   compel, we think there are no issues outstanding because

14   we basically produced all the documents that we have,

15   and we did an electronic production, and we ran that

16   production on agreed search terms that we worked out

17   with Mr. Beard.

18           So all of those documents and those search

19   terms applied for both this case and the ITC case.  All

20   the documents that came within the ambit of those search

21   terms have been produced with the exception of search

22   terms that we ran to try to find and exclude privileged

23   documents.  So we ran those search terms.  We drilled

24   down on those.  We excluded privileged documents.  So

25   from the point of view of electronic documents, we have

1    produced everything based on the agreed search terms.

2            Mr. Beard is correct, there are -- there is

3    maybe one or two depositions which were left open

4    because of the issues on damages, and certainly if this

5    case proceeds, those will -- those will take place.

6    There's no issue there.

7            With respect to discovery on damages, we

8    produced financial information at the ITC both on sales

9    and on costs of goods sold.  That will probably need to

10   be updated before we go to trial.  We're certainly

11   willing to do that.  Backup information, which is in the

12   form of voluminous documents, we've told Mr. Beard it's

13   available for you to inspect.  We don't know if you want

14   to copy it.  If you want to come up and inspect it

15   before you make a decision to copy these voluminous

16   amounts of documents at your expense, fine, come on up

17   and do it.  And we made that offer, and there -- and

18   they're open.

19           So as far as we're concerned, we've produced

20   everything we have.  There's nothing left to produce.

21   If there are some documents that may not have been

22   produced through the use of the search terms because

23   search terms aren't perfect with this electronic

24   discovery, we're certainly willing to look into that.

25   Mr. Beard has not identified any specific missing

1   documents, but if he does, we'll certainly work with him

2   on that and produce whatever needs to be produced.

3            THE COURT:  Okay.  All right.  Well, it

4   sounds to me you don't agree that there's anything left

5   opened.

6            So, Mr. Beard, exactly what is it that

7   you're seeking now that you hadn't already gotten with

8   respect to trademark -- your trademark infringement

9   claim damages and your unfair competition claim damages?

10           MR. BEARD:  Your Honor, when -- in fact, two

11  days ago, I submitted a letter to the Court which

12  explained that with the two motions that were --

13           THE COURT:  Well, if you've got a copy, you

14  might want to hand it up.

15           MR. BEARD:  I can tell you just one line

16  what it said.  It simply said we have these two motions

17  that are pending, we expect that the parties can work

18  through these additional requests.  If I were to make

19  specific requests for additional documents, I am

20  confident that opposing counsel will produce those to us

21  and we'll be able to move forward.

22           I simply didn't want to move these motions

23  off the calendar without bringing this discussion to the

24  Court's attention, because if I don't get those

25  documents in response to my specific requests, I'll be

1  right back here, Your Honor, with another motion to

2  compel asking them to be produced.

3        So as it stands right now, Your Honor, I

4  agree that we need to see what documents we've got.  If

5  there's follow-up, I need to make those specific

6  requests and then move forward at that time.

7        THE COURT:  All right.  Well, in light of

8  that, I'm denying the motion as moot, without prejudice

9  to your ability to refile one with respect to any items

10  that you request in the future but that are not produced

11  and to which you believe to be -- yourself to be

12  entitled, okay?

13        What's the next thing?

14        MR. COHEN:  Your Honor, we filed a motion to

15  stay this case under the provisions of 28 U.S.C.,

16  Section 1659.  There are two patents that are asserted

17  against Lucky Litter.  May I go to the podium, Your

18  Honor?

19        THE COURT:  Yes, please do.

20        MR. COHEN:  It's a little bit easier.  There

21  are two patents that are asserted in this case against

22  Lucky Litter and Doskocil.  In addition, there's a third

23  patent that's asserted against Doskocil, and let's leave

24  that aside for the moment.

25        So the two patents asserted against Lucky

1   Litter and Doskocil, the patents that are common are the

2   '847 patent, which is a reissue, and the '302 patent.

3   The '302 patent incorporates by reference the entire

4   specification of the '847 patent.  These same two

5   patents are also asserted by Applica against OurPet's in

6   the other case.  When we went to trial in the ITC, we

7   went to trial only on the '847 patent because that was

8   the only patent that Applica asserted in the ITC.

9            THE COURT:  That's the one to which you're

10  entitled to an automatic stay, correct?

11           MR. COHEN:  That's the one which the parties

12  agree that we're entitled to an automatic stay,

13  however --

14           THE COURT:  They agreed to what you were

15  entitled to, in other words, right?

16           MR. COHEN:  Yes.

17           THE COURT:  Okay.

18           MR COHEN:  We submit that we're also

19  entitled to a stay on the '302 as a matter of law

20  because Section 1659 says that the stay applies with

21  respect to any claim that involves the same issues, and

22  there is a common issue between the '302 and '847

23  patent, and that is our inequitable conduct defense.

24           And the reason why that is a common issue is

25  because that defense arises out of the failure by

1    Applica -- and by the way, Applica controlled and

2    directed the filing of the reissue application even

3    though that application was owned by Waters Research

4    Corporation.  Applica -- we have an admission in the ITC

5    that Applica directed the filing and prosecution of

6    that, and Applica always directed the filing and

7    prosecution of the '302 application.

8              Those applications, which are on common

9    subject matter, the claims are very close, not

10   identical, but because the '302 incorporates by

11   reference the entire specification of '847, there are --

12   the specification is common.  The '302 has a few

13   additional features that are not found in '847.

14             During the prosecution, our defense is,

15   which they, of course, disagree with, but our

16   inequitable conduct defense is that they took

17   inconsistent positions in front of both examiners about

18   the meaning of terms in the specification, whether the

19   specification discloses a manual mode or a manual

20   operation mode.  They were seeking claims for a manual

21   operation mode in the reissue.  In the '302, they got a

22   rejection based on the patent that was the subject of

23   the reissue.  Their claims were rejected as being

24   anticipated by that patent.  They said, well, that

25   patent doesn't disclose manual operation.

1                So they took inconsistent positions under

2    the rule that was in effect and is still in effect, Rule

3    1.56 of the patent office.  There is a duty to disclose

4    material information.  Material information defined as

5    inconsistent positions taken before the patent office on

6    different applications.  By definition, the information

7    they failed to disclose is material.  And we say both

8    patents are invalid because of inequitable conduct.  It

9    is the same conduct.  It is the taking of inconsistent

10   positions.

11               Under that -- for that reason, we say that

12   the language in Section 1659, 28 U.S.C. Section 1659,

13   says that the stay -- we're entitled to a stay with

14   respect to a claim that involves the same issues.  This

15   claim on the '302 involves the same issues, it involves

16   the inequitable conduct defense, which is an issue in

17   both cases, so we're entitled to a stay.

18               Now, the problem is there is a decision by

19   the Federal Circuit on petition for writ of mandamus,

20   which is the only way these stay issues reach the

21   Federal Circuit, In re: Princo.  In re: Princo held that

22   the stay that's in effect, the mandatory stay and

23   whether it's the -- whether Your Honor agrees that it's

24   just the '847 or the '847 and the '302, that stay

25   remains in effect until all appeals from the ITC are

1    exhausted.

2              Now, the problem we have in this case is we

3    have a trial set -- we have a Markman hearing set on

4    November 13th, if I can remember my dates correctly.

5    Trial is set on April 6th.  The ITC has set a deadline,

6    and usually they issue decisions on the deadline that

7    they set -- of March 2nd for the decision on the '847

8    patent.

9              If the stay remains in effect -- if Your

10   Honor grants a stay only on '847, now the question is do

11   we have a Markman hearing on just the '302 on November

12   13th?  What happens if the ITC decides the case in our

13   favor and Applica decides it's not going to appeal and

14   go to trial?  There's not time, we think, to do all the

15   things that need to be done in order to try the case on

16   April 6th.

17             Our suggestion is, and it's a practical one,

18   our suggestion -- and we discussed this with counsel,

19   and I apologize, Your Honor, I -- we got done with

20   the October -- we got done with the ITC trial on the

21   29th.  My 40th anniversary was on the 31st, so I took my

22   wife overseas for a vacation, got back a day or two ago

23   and was thinking about this, and, actually, I drove --

24             THE COURT:  I hope that you weren't thinking

25   about it on your vacation --

1          MR. COHEN:  I was not thinking about this on

2    vacation.

3          THE COURT:  -- overseas.  Well,

4    congratulations on your 40th anniversary.

5          MR. COHEN:  Thank you.  My wife deserves the

6    congratulations, maybe sainthood.

7          THE COURT:  We both overmarried, then, is

8    what you're telling me?

9          MR. COHEN:  Yes, yes, I am, Your Honor.

10         Mr. Storm and I discussed this, and it turns

11   out his trial date is November 2nd.  Our suggestion is

12   this, enter a stay on both patents.  Consolidate our

13   case with the case against OurPet's, and by the way,

14   Doskocil agrees with that.  Doskocil would agree with

15   that.

16         It is possible, but I can't guarantee it, it

17   is likely, very probable we'll have a decision from the

18   ITC on March 2nd.  If we lose, we, of course, are going

19   to appeal.  But if they lose, they've got a -- if we

20   lose, they get an exclusion order which is like an

21   injunction.  So if there's a delay in getting a trial,

22   the only delay is on damages because under the exclusion

23   order, we wouldn't be selling the accused product.

24         If they lose on March 2nd, we can still get

25   to trial because they don't have to appeal and the ITC

1    ruling doesn't bind anybody in this case.  If the trial

2    is set for November 2nd, then there are six months for

3    us to do whatever discovery we need to do.  We have done

4    most of the discovery in the ITC on liability.  There's

5    very little remaining to do because when we produce

6    witnesses, we, and Mr. Beard agreed, you're going to do

7    our witnesses for both cases.  We did their witnesses

8    for both cases.  There may be a little bit more to do

9    on the '302, but not much.

10           And the schedule, as I understand it, in the

11   OurPet's case has a Markman hearing for June 9th.  Well,

12   we could certainly be in a position to do a Markman

13   hearing on June 9th.  We would have the ITC's decision

14   on the '847 patent.  We would be probably briefing off

15   of that decision explaining why it's right or why it's

16   wrong.  It will certainly -- it doesn't bind Your Honor,

17   but it certainly would crystalize the issues and

18   probably -- probably save Your Honor and everybody else

19   a lot of work.

20           We could -- because these patents have

21   common -- large parts of the specifications are common,

22   I think it would make sense to do the Markman hearing on

23   both patents at the same time.  So assuming no appeal,

24   assuming they lose, if they lose, then we go to trial.

25   They don't have to appeal.  We just go to trial on

1    November 9th.  So we think that makes sense because it

2    gives this Judge -- this Court one trial instead of two

3    or more than two.

4             If we only stay -- if we keep our trial date

5    and only stay the case as to the '847, we go to trial on

6    the '302, then we have to try another case on the '847.

7    We have a jury that gets empanelled, and they've got to

8    hear the same witnesses on the same products twice, and,

9    actually, for us it will be the third time because we've

10   already tried this same case in the ITC.

11            And so we think from the point of view of

12   judicial economy, it makes sense to consolidate the

13   cases.  Stay this case now.  We'll come back to Your

14   Honor -- we'll report back to Your Honor on March 3rd or

15   March 4th as to what has happened in the ITC, and I

16   guarantee Your Honor that my client would be in a

17   position to tell Your Honor the day after whether or not

18   we're going to appeal or what we're going to do.

19            Now, my client -- I know that this -- my

20   client is very small.  We have 10 employees.  My client

21   really can't afford to try this case three or four

22   times.  I can't speak for Mr. Storm, but my

23   understanding is Mr. Storm's client is in the same

24   position as mine.

25            THE COURT:  Who does the manufacturing for

1   your client?

2            MR. COHEN:  The -- our product -- our

3   product is manufactured in China.

4            THE COURT:  I was asking that to follow up

5   on the ITC issue, so the manufacturing of it is imported

6   by your client --

7            MR. COHEN:  Correct.

8            THE COURT:  -- from China?  Okay.

9            MR. COHEN:  Right.  And they have -- our

10  manufacturer has an exclusive agreement with us.  If we

11  are enjoined or if there's an exclusion order that's

12  issued against us, my client will instruct its

13  manufacturer immediately to stop importing into the

14  United States.  And I'll make that representation to

15  this Court, that is what we will do.  We play by the

16  rules.

17            THE COURT:  Okay.  Thank you.

18            Mr. Beard, response?

19            MR. BEARD:  Your Honor, a little more

20  background, I think, would be helpful at this point.

21            There are three patents that are currently

22  at issue before this Court.  They are the '302, the

23  '847, and the Carlisi patent.  They are two defendants

24  that are in this case, Lucky Litter and Doskocil.

25  Doskocil is not represented here today.

1              Doskocil has two separate products that are

2       at issue, so when these patents -- all three patents

3       cover both of those products.  With respect to Lucky

4       Litter, only the '847 patent and the '302 patent are

5       being asserted against the Lucky Litter product.  When

6       we went to the -- and just for context, there's the

7       OurPet's Company that's in the second case.  Only the

8       '302 patent and the '847 patent are being asserted

9       against their product.

10             So when we went to the International Trade

11      Commission, we picked the one patent.  The International

12      Trade Commission is very streamlined, tried to get

13      everything through as quick as we could.  One patent was

14      chosen.  It was the '847 patent.  And that covered all

15      of the products except for one of Doskocil's.  So that's

16      why that -- that patent was chosen, and that's why it

17      was litigated at the International Trade Commission.

18             The next big thing to think about here is

19      what is the relationship of the '302 patent and the '847

20      patent, because, Your Honor, the stay is mandatory as to

21      the '847 patent, but it is discretionary as to all other

22      issues in the case to the extent they are not similar.

23      The cases that analyze this similarity --

24             THE COURT:  He's telling me that it's

25      mandatory, as I understood it, with respect to the '302

1    due to the presence of an inequitable conduct defense

2    directed toward both patents, if I understood him.

3              MR. BEARD:  That's the argument I heard, as

4    well, Your Honor.

5              THE COURT:  Well, why is that wrong?

6              MR. BEARD:  That is wrong because the issue

7    is similarity of patents.  The cases analyze all of the

8    patents and whether there's a relationship between those

9    patents to figure out whether, in fact, there is

10   similarity of issues.  The '302 patent is not at all

11   part of the same family as the '847 patent.

12             And, again, part of the history here is a

13   gentleman by the name of Mr. Waters is the inventor of

14   the '847 patent.  When he got his patent, he got his

15   business up and running and had his LitterMaid products

16   being sold, Applica came along and bought that business

17   from him and obtained an exclusive license to the '847

18   patent.

19             Their inhouse engineers then improved the

20   product and added to it an additional feature, which is

21   a safety mechanism that is important so that cats, when

22   they enter the box, don't get hurt or maimed.  That is

23   the focus of the '302 patent.  So when --

24             THE COURT:  Was there a big problem with

25   that?

1          MR. BEARD:  There actually --

2          THE COURT:  I'm being serious.

3          MR. BEARD:  There actually had been some

4   instances where people -- yeah, there were problems with

5   cats having been hurt, so --

6          THE COURT:  Okay.

7          MR. BEARD:  -- so there was a real reason

8   for this second invention to come along, and that wasn't

9   discovered as an issue until Applica Consumer Products

10  got ahold of the business and started manufacturing

11  their products, and then this issue came up, and the

12  solution to that was invented by Mr. Arnold Thaler who

13  was an employee of Applica.

14          So when Mr. Thaler filed his patent

15  application on behalf of Applica, he borrowed some of

16  the same text and some of the same figures from that

17  earlier '847 patent.  This is three years later.  So

18  there's copendency, there's no familial relationship.

19  He just said, look, I'm starting with the same box, but

20  I'm going to add this additional safety feature

21  functionality, and that's the focus of my invention.

22          So that's why there's two separate patents

23  here.  One is on the underlying box, and the '302 is an

24  improvement to it in the form of this safety feature.

25          THE COURT:  Drawn toward the box with the

1   feature, correct?

2            MR. BEARD:  Correct.

3            THE COURT:  Okay.

4            MR. BEARD:  Correct.

5            THE COURT:  I got it.

6            MR. BEARD:  So with that background, we see

7   that the patents are dissimilar, and most all of the

8   cases that analyze whether or not there's similarity of

9   issues and whether there's a mandatory stay, analyze

10  whether they're in the same family, are the same -- is

11  there a joint inventor that's named, those types of

12  issues, and what is the overlap in the claimed subject

13  matter?

14            And here we have dissimilar inventors.  We

15  have dissimilar owners.  There's no familial

16  relationship between the patents, and the claimed

17  subject matter is substantially different, wherein the

18  '847 patent relates to the underlying box, and the '302

19  is the safety feature.

20            So that's our basis for arguing that there

21  is no similarity of issues and therefore no mandatory

22  stay as to the '302 patent.  It's within this Court's

23  discretion, then, to decide, well, as a matter of

24  judicial economy and such, should we stay the whole

25  issue?

1              Your Honor, besides that, there are

2    additional issues.  When Lucky Litter came into

3    business, we discovered that one of the first things

4    they did was they took our trademark, which is the

5    LitterMaid trademark that Applica obtained when they

6    bought the business from Mr. Waters.  That -- we learned

7    that LitterMaid took that trademark and embedded it in

8    their metadata for their advertising and it was a

9    trademark infringement.  So that's the primary basis for

10   our trademark infringement claim.  That's a separate

11   issue that's also a cause of action in the case that's

12   separate from any of the patent issues, and that's part

13   of what still remains to be discovered at this point.

14             So, again, a second issue that's completely

15   dissimilar or unrelated to any of the patent issues in

16   the case, that -- that is a cause of action that stands

17   alone.  So when we talk about whether the Court is going

18   to exercise its discretion to stay portions of the case,

19   the '302 patent should go forward and the trademark

20   infringement claims should go forward.

21             The next thing I would bring to the Court's

22   attention is the status of the discovery that took place

23   in the case, and I made some mention of that before.  By

24   agreement between the parties, when we went and deposed

25   all of the Lucky Litter witnesses and all the third

 1  parties that were related to Lucky Litter, all of those

 2  depositions were conducted pursuant to both this case

 3  and the ITC.  So we were forced to go forward and

 4  conduct all of our '302 discovery.  And so for all those

 5  technical witnesses, we have -- you know, the discovery

 6  has taken place and is water under the bridge at this

 7  point for both the '847 patent and the '302 patent as it

 8  relates to Lucky Litter.  That's why at this point the

 9  only thing remaining for us to discover are the damages

10  issues and then the trademark infringement claim.

11          So with that status, you know, the whole

12  purpose for a stay is that there wouldn't be this

13  conflicting discovery or, you know, discovery happening

14  in one instance first and then taking place again later.

15  Well, we've actually resolved that at this point by

16  having done it all together.

17          THE COURT:  Well, so if I deny the stay, the

18  thing that might have to be done twice is only me

19  sitting through this case twice, once with the '302 and

20  then once with the '847?

21          MR. BEARD:  Your Honor, we're not proposing

22  any scenario where this Court would sit twice, once for

23  the '847 and then again for the '302.  We recognize that

24  if there's a stay to be entered as to the '847 patent

25  right now, that the date in April would be in jeopardy.

1    There would be some additional discovery that would need

2    to take place, the Markman hearing as to the -- the '847

3    patent, all of that just would not be practical for this

4    Court to be able to accomplish that in one month after

5    March 2nd until April the 9th when this case is set for

6    trial.

7            So with respect to the issue of scheduling,

8    we would propose the next earliest trial setting that

9    this Court could give the Lucky Litter case beyond --

10   this, again, assumes that a mandatory stay is the '847

11   is --

12           THE COURT:  Well, I didn't think y'all were

13   disputing that there was a mandatory stay on the '847.

14   Is that -- are you disputing that or not?

15           MR. BEARD:  No, Your Honor.

16           THE COURT:  Okay.

17           MR. BEARD:  The statute is clear.

18           THE COURT:  I mean, I have to grant, then.

19           MR. BEARD:  That is correct.

20           THE COURT:  Okay.  Well, I'm -- to the

21   extent it hadn't been granted, it's granted.  And so

22   what you're telling me now is that the trial that I've

23   got set in April is -- I don't need to plan on having it

24   is what you're telling me?

25           MR. BEARD:  That is correct, Your Honor.

```
 1              THE COURT:  Okay.  So then the issue would
 2    be whether or not I would stay, then, the '302 for
 3    discretionary reasons or if I deny the stay, then you
 4    just want me to reset the case on both patents for some
 5    time, and I don't know what time that would be.  You
 6    know, give me a suggestion.  I mean, I --
 7              MR. BEARD:  Your Honor, our dream would be
 8    sometime in June or July would be the trial setting,
 9    that way we right now, with the discretionary -- with
10    there being no stay as to the '302 patent and the
11    damages issues and the trademark, we would be able to
12    get a lot of that discovery done.  Anything else that
13    needs to be cleaned up after the stay as to the '847
14    would be lifted, and then we'd be ready for trial at the
15    Court's earliest opportunity.  That way we're having one
16    trial on both the '847 patent and the '302 patent.
17              THE COURT:  Well, tell me what happens if,
18    from a procedural standpoint, if you win at ITC and then
19    they notice an appeal.  The stay, as I understand it,
20    extends through the appeal; is that right?
21              MR. BEARD:  That was brought to my
22    attention.  Counsel provided us a case.  It was not my
23    understanding that that was the law prior to an hour
24    ago, and I have not reviewed the law on that to see
25    where that stands.  My understanding was was that the
```

1    statute says upon final, and by statute, the ITC

2    decisions will be as follows:  The administrative law

3    judge will issue its initial determination on December

4    2nd.  By statute, two months later the Commission will

5    issue its decision on February 2nd, and then there's the

6    30-day wait period which means March 2nd, it's final.

7              THE COURT:  So in your view, final, for

8    purposes of the expiration of the stay, is the same

9    finality that we need to attach for there to be an

10   appealable judgment; is that right?

11             MR. BEARD:  And I must admit, Your Honor, I

12   have not read the case that has been brought forward and

13   researched to understand whether that, in fact, is the

14   case.

15             THE COURT:  Okay.  What's the status?  I'm

16   asking either side, if there's an appeal, is an order,

17   you know, that bars the importation -- I don't know what

18   it's called, an impoundment order; is that right?

19             MR. BEARD:  It's an exclusion order.

20             THE COURT:  Exclusion order.  What is the

21   effect of the exclusion order during the pendency of an

22   appeal?

23             MR. BEARD:  Your Honor, I understand that we

24   would post a bond, and during an appeal, the exclusion

25   order would be in place subject to a bond.

1          THE COURT:  Okay.  Is that your

2   understanding?

3          MR. COHEN:  Your Honor, yes, that is my

4   understanding.  The Commission has -- there are three

5   forms of remedy the Commission can issue.  One is a

6   general exclusion order which would apply across the

7   board.  We don't think that's applicable in this case.

8   The other one is a limited exclusion order which applies

9   only as to the parties.  That is like an injunction.  It

10  is an order that prevents the importation of product

11  into the United States.

12          Ours is made in China, as we told Your

13  Honor, so that would prevent the importation of the

14  product that was at issue in the ITC case into the

15  United States, and then the ITC also has authority to

16  grant a cease and desist order which would apply if it

17  granted it against product that had been imported prior

18  to the order in the United States.  So it's like an

19  injunction.

20          THE COURT:  Okay.  Okay.  So, Mr. Beard, to

21  the extent that the stay extends beyond the final order

22  from which there's been an appeal taken, it extends into

23  the appeal period, your client would be protected by the

24  order, the exclusion order?

25          MR. BEARD:  The exclusion order, that is

1    correct.

2             THE COURT:  Okay.  Mr. Beard, in a perfect

3    world, your June or July date would be acceptable to me

4    to reset the case to, but in a perfect world, I wouldn't

5    have Markman hearings set every other week and trials

6    loading me up through the summer.

7             So what I'm going to do is -- I've

8    considered the arguments.  I'm going to deny the stay

9    with respect to the '302 patent.  It's granted with

10   respect to the '847 patent.  I'm taking the case off the

11   docket.  I'm resetting it for September the 8th.  That's

12   the day after Labor Day.

13            And I want y'all to meet and confer and give

14   me a proposed docket control order that puts forth in a

15   general sense the time that y'all think y'all need to

16   get ready for a Markman hearing on the '847 after March

17   the 2nd.

18            Okay.  Yes, sir?

19            MR. COHEN:  Your Honor, may I -- may I be

20   heard just on two points?

21            First of all, on the -- on the trademark

22   claims, my client stopped the accused action as soon as

23   they filed their amended complaint.  So, again, there's

24   no issue there going forward.  They stopped, and we say

25   what they did was not a violation.  There's -- but I

1   just want to make that point.  So that's also a damages

2   issue.

3                Second, on the '302, the improvement that

4   Mr. Beard described, which is part of the claims that

5   are asserted against us, we don't have that improvement,

6   and what they're claiming is -- and this is a claim

7   construction issue that relates to what is in the '847

8   patent, which is why we say these things are so

9   intertwined because that -- they're saying what we're

10  doing is what was in that '847 patent.  We're doing

11  exactly what was in the '847 patent.  It's a motor stall

12  sensor.  They didn't claim it in the '847 patent.  We

13  don't have that safety feature that they added.  That's

14  a claim construction issue that Your Honor is going to

15  have to decide on '302 that --

16               THE COURT:  It's a Johnson and Johnson

17  issue, isn't it?  If they disclosed it and not claimed

18  it in the '847, then what you're going to argue is that

19  it's dedicated, right?

20               MR. COHEN:  Exactly.

21               THE COURT:  Okay.  Well, I'll decide that at

22  the appropriate time.

23               MR. COHEN:  Exactly, Your Honor.  I should

24  tell Your Honor the only way -- this stay is critical to

25  our client, and I must inform Your Honor, the only way

1    we have of challenging this order would be to file a

2    petition for a writ of mandamus, and I'm --

3              THE COURT:  Well, I'm not asking you to do

4    anything that you wouldn't do to try to protect your

5    client's interest.

6              MR. COHEN:  I must do that, Your Honor.

7              THE COURT:  But I'm going to call them like

8    I see them.  I don't think that they're as intertwined

9    as you say that they are or with the case law that you

10   cited in your brief, and I'm not offended by you taking

11   such action as you would like -- as you believe is

12   necessary to represent your client.

13             MR. COHEN:  Thank you, Your Honor.

14             THE COURT:  Okay?

15             MR. COHEN:  I just wanted to make that

16   clear.  I'm just doing it to protect my -- to protect my

17   client.

18             THE COURT:  Listen, I mean, I'm not -- I

19   understand.  But at the same time, I'm going to call

20   them like I see them here as opposed to whether or not I

21   think I'm going to get reversed, okay?

22             MR. COHEN:  I appreciate that, Your Honor.

23             THE COURT:  Okay.  All right.  Does that

24   take care of everything in the first Applica matter?

25             MR. SADLER:  Yes, Your Honor, from the

1   plaintiff, everything in the first case.

2          THE COURT:  Okay.  Okay.  All right.  Y'all

3   are excused, then, unless you just want to stick around.

4          Mr. Gillam, travel safely back to your

5   office.

6          MR. GILLAM:  I'll be back later, Your Honor.

7          THE COURT:  Okay.  Well, I'll see you then.

8          (Hearing concluded.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                        CERTIFICATION

 2

 3            I HEREBY CERTIFY that the foregoing is a

 4    true and correct transcript from the stenographic notes

 5    of the proceedings in the above-entitled matter to the

 6    best of my ability.

 7

 8

 9
      SHELLY HOLMES                          Date
10    Substitute Official Reporter
      State of Texas No.: 7804
11    Expiration Date:    12/31/08

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```